1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| EDWARD KHALIL KAKISH, | ) | Case No. CV 09-8056 JCG |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

18
19

**I.**

20

## INTRODUCTION AND SUMMARY

21        On November 9, 2009, plaintiff Edward Khalil Kakish ("Plaintiff") filed a

22 complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"),

23 seeking review of a denial of disability insurance benefits ("DIB") and supplemental

24 security income benefits ("SSI").  [Docket No. 3.]

25        On March 25, 2010, Defendant filed his answer, along with a certified copy of

26 the administrative record.  [Docket Nos. 18, 19.]

27        Pursuant to a November 10, 2009 case management order, the parties

28 submitted a detailed, 29-page joint stipulation for decision on May 6, 2010.  [Docket

1    No. 20.]

2    On December 1, 2010, this matter was transferred to the calendar of the

3    undersigned Magistrate Judge.  [Docket No. 21.]  Both Plaintiff and Defendant

4    subsequently consented to proceed for all purposes before the Magistrate Judge

5    pursuant to 28 U.S.C. § 636(c).  [Docket Nos. 22, 23.]  The Court deems the matter

6    suitable for adjudication without oral argument.

7    In sum, having carefully studied, *inter alia*, the parties' joint stipulation and

8    the administrative record, the Court concludes that the ALJ failed to develop the

9    record fully and fairly with respect to Plaintiff's mental impairments.  As the Ninth

10   Circuit instructs, an ALJ bears the burden to scrupulously and conscientiously

11   explore the relevant facts, particularly where the claimant is self-represented and

12   may suffer from mental impairments.  The Court thus remands this matter to the

13   Commissioner in accordance with the principles and instructions enunciated in this

14   Memorandum Opinion and Order.

15                                    **II.**

16               **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

17   Plaintiff, who was 39 years of age on the date of his administrative hearing,

18   has a high school education.  (Administrative Record ("AR") at 31, 34, 35, 65, 94.)

19   His past relevant work includes employment as a gas station attendant and stock

20   checker.  (*Id.* at 17, 45.)

21   Plaintiff protectively filed for DIB and SSI on September 17, 2007, alleging

22   that he has been disabled since February 3, 2006 due to mental impairments and pain

23   in his legs and feet.  (AR at 57, 65-67, 68-71, 78.)  Plaintiff's applications, which

24   were designated as a "prototype" case,[1] were denied on February 25, 2008, after

25

26   _____

27      [1]  A "prototype case" designates a single decision maker to make the initial
     determination and eliminates the reconsideration step in the administrative review
28   process.  20 C.F.R. §§ 404.906(a) & 416.1406(a).

                                          2

1   which he filed a timely request for a hearing.  (*Id.* at 52, 53, 57-61, 63.)

2         On March 30, 2009, Plaintiff, proceeding *pro se*, appeared and testified at a

3   hearing before an Administrative Law Judge ("ALJ").  (AR at 31, 33-44.)  Elizabeth

4   Ramos-Brown, a vocational expert ("VE") also testified.  (*Id.*  at 10, 31, 44-49.)

5         On May 20, 2009, the ALJ issued an unfavorable decision denying Plaintiff's

6   request for benefits.  (AR at 10-19.)  Applying the five-step sequential evaluation

7   process, which is discussed in detail below, the ALJ found, at step one, that Plaintiff

8   has not engaged in substantial gainful activity since his alleged onset date of

9   disability.  (*Id.* at 12.)

10         At step two, the ALJ found that Plaintiff suffers from severe impairments

11   consisting of a "history of back pain; history of hepatits A and hepatitis B; history of

12   foot pain; history of shortness of breath; obesity; mood disorder, not otherwise

13   specified, and history of polysubstance abuse, in early remission."  (AR at 13

14   (emphasis and citations omitted).)

15         At step three, the ALJ determined that the evidence does not demonstrate that

16   Plaintiff's impairment, either individually or in combination, meet or medically

17   equal the severity of any listing set forth in the Social Security regulations.[2]  (AR at

18   13.)

19         The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and

20   determined that he can "perform the full range of medium work . . . [and i]n the

21   mental realm, [Plaintiff] can perform simple, repetitive work that is solitary and non-

22

23       [2]   *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

24

25       [3]   Residual functional capacity is what a claimant can still do despite existing
exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26   n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

28   Cir. 2007).

public."  (AR at 14 (emphasis omitted).)

The ALJ found, at step four, that Plaintiff lacks the ability to perform his past relevant work.  (AR at 16-17.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including rack loader, recycler, and rug cutter.  (AR at 17-18 (emphasis omitted).)  Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act.  (*Id.* at 11, 18.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council.  (AR at 1-3, 20.)  The ALJ's decision stands as the final decision of the Commissioner.

## III.

## APPLICABLE LEGAL STANDARDS

A.    Five-Step Inquiry to Ascertain a Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits:  (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements.  The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity?  If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months?  If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner

4

1   under 20 C.F.R. part 404, subpart P, appendix 1?  If so, the claimant is automatically
2   determined to be disabled.

3         Fourth, is the claimant capable of performing his past work?  If so, the
4   claimant is not disabled.

5         Fifth, does the claimant have the so-called "residual functional capacity" to
6   perform some other type of work?   The critical question posed here is whether the
7   claimant can, in light of the impairment and his or her age, education and work
8   experience, adjust to another form of gainful employment?

9         If a claimant is found "disabled" or "not disabled" along any of these steps,
10   there is no need to complete the remaining inquiry.  20 C.F.R. §§ 404.1520(a)(4) &
11   416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

12         B.       Standard of Review on Appeal

13         This Court is empowered to review decisions by the Commissioner to deny
14   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
15   Administration must be upheld if they are free of legal error and supported by
16   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*
17   *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings
18   are based on legal error or are not supported by substantial evidence in the record,
19   the court may reject the findings and set aside the decision to deny benefits.
20   *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
21   242 F.3d 1144, 1147 (9th Cir. 2001).

22         "Substantial evidence is more than a mere scintilla, but less than a
23   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
24   evidence which a reasonable person might accept as adequate to support a
25   conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d
26   at 459.  To determine whether substantial evidence supports the ALJ's finding, the
27   reviewing court must review the administrative record as a whole, "weighing both
28   the evidence that supports and the evidence that detracts from the ALJ's

conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### IV.

### ISSUES PRESENTED

Three disputed issues are presented for decision here:

1.      whether the ALJ failed to fully and fairly develop the record with respect to Plaintiff's physical and mental impairments, (*see* Joint Stip. at 4-5, 10-14);

2.      whether the ALJ properly assessed Plaintiff's credibility, (*Id.* at 14-16, 21-24); and

3.      whether the ALJ improperly discounted a lay witness's statements.  (*Id.* at 24-26, 28.)

Under the circumstances here, the Court finds the issue of the ALJ's failure to fully and fairly develop the record with respect to Plaintiff's *mental* impairments to be dispositive of this matter, and does not reach the remaining issues.

### V.

### DISCUSSION AND ANALYSIS

Plaintiff argues that the "ALJ failed to comply with his duty to develop the record when he did not contact . . . Plaintiff's Mental Health clinic after . . . Plaintiff informed him at the hearing that he received treatment at those facilities during the period for which he is alleging disability."  (Joint Stip. at 4.)  Plaintiff contends that because he "was unrepresented by counsel" and "testified that he received . . . psychiatric care," the ALJ should have contacted the medical sources and supplemented the record "prior to issuing his decision on the claim."  (*Id.* at 4-5.)

1    Defendant counters that:  (1) the "ALJ's duty to further develop the record is
2    only triggered by ambiguous evidence or if the evidence is insufficient upon which
3    to make a disability determination" but the "evidence here was neither";
4    (2) "Plaintiff must show that any additional material evidence actually existed" and
5    "new evidence is only material (and thus, relevant) if there is a reasonable possibility
6    that the new evidence would have changed the outcome of the Commissioner's
7    determination"; and (3) "Plaintiff bears the burden of establishing both the existence
8    of medically determinable impairments and also proving that they prevent him from
9    engaging in all substantial gainful activity."  (Joint Stip. at 6, 8-9.)

10         A.    The ALJ's Duty to Fully and Fairly Develop the Record

11    Although the claimant is ultimately responsible for providing sufficient
12    medical evidence of a disabling impairment, it has "long [been] recognized that the
13    ALJ is not a mere umpire at [an administrative hearing], but has an independent duty
14    to fully develop the record[.]"  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992,
15    *as amended* Sept. 17, 1992) (*per curiam*); *see also Sims v. Apfel*, 530 U.S. 103,
16    110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.
17    It is the ALJ's duty to investigate the facts and develop the arguments both for and
18    against granting benefits[.]"); *Tonapetyan*, 242 F.3d at 1150 ("The ALJ in a social
19    security case has an independent duty to fully and fairly develop the record and to
20    assure that the claimant's interests are considered.") (internal quotation marks and
21    citations omitted).

22    This is especially true where the claimant is unrepresented by counsel.
23    *Tonapetyan*, 242 F.3d at 1150 ("When the claimant is unrepresented, . . . the ALJ
24    must be especially diligent in exploring for all the relevant facts."); *accord Widmark*
25    *v. Barnhart*, 454 F.3d 1063, 1068-69 (9th Cir. 2006).  Indeed, "'where the claimant
26    is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously
27    probe into, inquire of, and explore for all the relevant facts.  He must be especially
28    diligent in ensuring that favorable as well as unfavorable facts and circumstances are

1  elicited.'" *Higbee*, 975 F.2d at 561 (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th

2  Cir. 1978)).  "The ALJ's duty to develop the record fully is also heightened where

3  the claimant may be mentally ill and thus unable to protect her own interests."

4  *Tonapetyan*, 242 F.3d at 1150; *accord Higbee*, 975 F.2d at 562.

5          If the evidence is ambiguous or inadequate to permit a proper evaluation of a

6  claimant's impairments, the ALJ has a duty to "conduct an appropriate inquiry[.]"

7  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *accord Tonapetyan*, 242 F.3d

8  at 1150.  The ALJ may discharge this duty in several ways, including:

9  (1) subpoenaing the claimant's physicians; (2) submitting questions to the claimant's

10 physicians; (3) continuing the hearing; or (4) keeping the record open after the

11 hearing to allow supplementation of the record.  *Tonapetyan*, 242 F.3d at 1150.

12         B.       Evidence of Plaintiff's Mental Impairments

13         On January 30, 2008, examining psychiatrist Ernest A. Bagner III, M.D. ("Dr.

14 Bagner") completed a complete psychiatric assessment of Plaintiff.  (AR at 375-78.)

15 In completing the assessment, Dr. Bagner reviewed psychiatric "notes" from a

16 "social worker, dated 6/30/06 and 6/7/06" and a psychiatric evaluation from a mental

17 health center dated October 4, 2006.  (*Id.* at 376.)

18         Dr. Bagner indicated that Plaintiff stated, he "hear[s] things, see[s] things,

19 can't sleep, [is] depressed, angry, [has] headaches, pains and [is] worried."  (AR at

20 375 (internal quotation marks omitted).)  Dr. Bagner further indicated Plaintiff

21 reported "mood swings, nervousness, feelings of helplessness and hopelessness and

22 difficulty with concentration and memory."  (*Id.*)

23         Dr. Bagner noted that Plaintiff "reports that he was arrested 12 times," "lives

24 on the streets," has a history of polysubstance dependency, and "is not receiving any

25 psychiatric treatment."  (AR at 376-77.)  Dr. Bagner diagnosed Plaintiff with

26 "[m]ood disorder, not otherwise specified" and polysubstance abuse "in early

27 remission."  (*Id.* at 377.)  Dr. Bagner also opined that if Plaintiff "receives

28 psychiatric treatment, he should be significantly better in less than six months."  (*Id.*

1   at 378.)

2      On February 11, 2008, non-examining physician Raffi Tashjian, M.D. ("Dr.

3   Tashjian") completed a Psychiatric Review Technique form.  (AR at 383-93.)  In the

4   form, Dr. Tashjian opined that Plaintiff suffers from affective disorder and substance

5   addiction disorder and found that Plaintiff was "in early remission."  (*Id.* at 383,

6   389.)

7      On the same day, Dr. Tashjian also completed a Mental Residual Functional

8   Capacity Assessment.  (AR at 394-96.)  In the assessment, Dr. Tashjian determined

9   that Plaintiff is "moderately limited" in his ability to understand, remember, and

10  carry out detailed instructions, and "moderately limited" in his "ability to interact

11  appropriately with the general public."  (*Id.* at 394-95.)  Dr. Tashjian found no

12  further significant limitations regarding Plaintiff's mental RFC.  (*See id.* at 394-96.)

13     At the administrative hearing, Plaintiff testified that he was "fired . . . because

14  [he] started getting crazy."  (AR at 35.)  The ALJ questioned whether any "condition

15  or conditions would prevent [Plaintiff] from working" and he responded, "My, well,

16  I hear voices.  I can't sleep.  I'm seeing things."  (*Id.*)   The following exchange then

17  occurred between the ALJ and Plaintiff regarding Plaintiff's mental health:

18      [ALJ:]      Have you ever seen a psychiatrist at [the clinic

19                  where you are treated for physical impairments]?

20      [Plaintiff:]  No, *I go to the other clinic psychiatrist*, from court

21                  they send me.

22      [ALJ:]      Yeah, what's that doctor's name?

23      [Plaintiff:]  *Dr. Kashishian. . . . I have the information on the*

24                  *pills if you need it.*

25      [ALJ:]      Well, you can make me another list and the dosages.

26                  Why were you sent there from court?

27      [Plaintiff:]  Because I got, I started getting crazy, and *I went to*

28                  *jail, and then they said I needed to see a, in a psych*

9

| 1 | | *dorm or something.* |
|---|---|---|
| 2 | [ALJ:] | What's the name of the clinic that he is working |
| 3 | | with? |
| 4 | [Plaintiff:] | *Mental Health Services, 2620 California Avenue.* |
| 5 | [ALJ:] | And that, your attendance there was court ordered? |
| 6 | [Plaintiff:] | Yes. |
| 7 | [ALJ:] | And he has been giving you medication? |
| 8 | [Plaintiff:] | It's right here. |
| 9 | [ALJ:] | When you said you [were] sent there by the court for |
| 10 | | getting crazy, what did you do that caused you to be |
| 11 | | introduced into the court system? |
| 12 | [Plaintiff:] | *I was going like hearing voices and everything, and then* |
| 13 | | *my family threw me in jail to get help, and the mental* |
| 14 | | *health doctor, she told me that I need to be in the, I don't* |
| 15 | | *know, see the psych or something.* |
| 16 | [ALJ:] | Has a psychiatrist told you what the condition you have is |
| 17 | | called? |
| 18 | [Plaintiff:] | Yes. |
| 19 | [ALJ:] | And what, what did he say? |
| 20 | [Plaintiff:] | *Bipolar.* |

21  (*Id.* at 36-37 (emphasis added).)

22      C.    <u>The ALJ's Assessment of Plaintiff's Mental Impairments</u>

23         In assessing Plaintiff's mental RFC, the ALJ adopted consultative examiner

24  Dr. Bagner and non-examining physician Dr. Tashjian's opinions.  (AR at 14-15.)

25  Specifically, the ALJ stated:

26          I base my mental residual functional capacity assessment on the

27          opinion of the State Agency psychiatrist [Dr. Tashjian] who

28          found [Plaintiff] has moderate limitations in the abilities to

> understand, remember, and carry out detailed instructions, and
> interact appropriately with the general public, such that he is
> capable of simple repetitive tasks.  This opinion is consistent
> with that of the consultative examiner, Dr. Bagner[.] . . . ¶ *There*
> *is no contrary opinion evidence to discuss*.

(*Id.* (emphasis added).)

> D.   <u>The ALJ Failed to Fully and Fairly Develop the Record</u>

Having carefully reviewed the record and the parties' papers, the Court is persuaded that the ALJ failed to fully and fairly develop the record and his decision is not supported by substantial evidence.  Three reasons guide this Court's determination.

First, the ALJ's conclusion that "[t]here is no contrary opinion evidence to discuss" is not supported by substantial evidence.  At the hearing, Plaintiff testified that he was under court order to receive mental health treatment at "Mental Health Services, 2620 California Avenue," was currently receiving mental health treatment, was prescribed medication for his mental impairments, and was diagnosed with bipolar disorder.  (*See* AR at 36-37.)  Further, the Court found numerous instances in the record where *treating* physicians and their mental health teams contradicted the opinions of Dr. Bagner and Dr. Tashjian or, at best, indicated that there was an uncertainty surrounding Plaintiff's mental health diagnosis, including:

1.   an adult initial assessment from Los Angeles County Department of Mental Health ("LACDMH"), dated October 4, 2006, stating that Plaintiff reports he is "depressed," feels "anxious when [he is] around people," and feels like "people are watching [him]" and "following [him]," (*id.* at 369-74);

2.   a mental health evaluation report from Los Angeles County Sheriff's Department ("LACSD"), dated November 16, 2007, describing that "[Patient] stated that he threw his laundry down the window at home from the 2nd floor to the ground.  His family thought that he has mental illness and should get help.  His

1    brother called the police," (*id.* at 334);

2         3.      a mental health report from LACSD, dated November 16, 2007,

3    indicating Plaintiff's mother stated, "[he's] sick, he was talking too much . . . he

4    escaped from the hospital" and "he cries, states I'm going to die," (*id.* at 339); and

5         4.      a discharge summary report from LACDMH, dated August 30, 2007,

6    describing Plaintiff has a "working diagnosis of psychotic disorder," not otherwise

7    specified, and polysubstance dependence.  (*Id.* at 367.)

8         Second, the ALJ's reliance on Dr. Bagner and Dr. Tashjian's opinions is

9    undermined because both physicians formed their conclusions prior to Plaintiff's

10   more recent and substantive treatment diagnosing Plaintiff with bipolar disorder.

11   (*Compare* AR at 375-78 (consultative examination performed by Dr. Bagner on

12   January 30, 2008), 383-401 (Psychiatric Review Technique form and Mental

13   Residual Functional Capacity Assessment completed by Dr. Tashjian on February

14   11, 2008) *with id.* at 36-37 (Plaintiff's testimony at hearing on March 30, 2009 that

15   he was receiving mental health treatment and was diagnosed with bipolar disorder).)

16   Further, Dr. Bagner made a limited review of Plaintiff's medical records and noted

17   that Plaintiff was "not receiving any psychiatric treatment" at the time of his

18   examination.  (*Id.* at 376 (indicating Dr. Bagner reviewed psychiatric notes from

19   three treatment visits), 377.)  Accordingly, Dr. Bagner's opinion is inconclusive in

20   light of Plaintiff's other mental health records, (*see, e.g., id.* at 331-74), and more

21   recent treatment and diagnosis.

22        Moreover, the ALJ's adoption of the non-examining and non-treating

23   physician Dr. Tashjian, standing alone, does not constitute "substantial" evidence

24   here.  *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995, *as amended* Apr. 9,

25   1996) ("In the absence of record evidence to support it, the nonexamining medical

26   advisor's testimony does not by itself constitute substantial evidence that warrants a

27   rejection of . . . the examining [physician]'s opinion."); *Erickson v. Shalala*, 9 F.3d

28   813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion, *with*

1  *nothing more*, does not constitute substantial evidence[]") (internal quotation marks,

2  brackets and citation omitted) (italics in original).

3        Third, given what was at best ambiguous evidence, the ALJ should have

4  further developed the record.  The ALJ had a heightened duty to develop the record

5  because Plaintiff was unrepresented and suffered from a severe mental impairment.

6  *See Tonapetyan*, 242 F.3d at 1150 ("When the claimant is unrepresented, . . . the

7  ALJ must be especially diligent in exploring for all the relevant facts."); *id.* ("The

8  ALJ's duty to develop the record fully is also heightened where the claimant may be

9  mentally ill and thus unable to protect her own interests.").  The ALJ should have

10  obtained medical records from Dr. Kashishian at Mental Health Services on 2620

11  California Avenue as identified by Plaintiff, and/or a more recent consultative

12  examination because the record was inadequate to assess the functional limitations

13  caused by Plaintiff's alleged mental impairments.  *See* 20 C.F.R. §§ 404.1512(e)-(f)

14  (authorizing ALJ to subpoena medical records from plaintiff's treating sources

15  and/or order consultative examinations when the record is unclear to adequately

16  evaluate a claimant's functional limitations caused by his or her impairments) &

17  416.912(e)-(f) (same); *see also Smolen*, 80 F.3d at 1288 (ALJ's duty to develop the

18  record triggered when the evidence is inadequate to assess any functional limitations

19  caused by a claimant's impairment).

20        Defendant argues that "Plaintiff must show that any additional material

21  evidence actually existed" and "new evidence is only material (and thus relevant) if

22  there is a reasonable possibility that the new evidence would have changed the

23  outcome of the Commissioner's determination had it been before him."  (Joint Stip.

24  at 8-9.)  In support of this proposition, Defendant cites to two cases:  *Duenas v.*

25  *Shalala*, 34 F.3d 719 (9th Cir. 1994) and *Booz v. Sec'y of Health and Human Serv.*,

26  734 F.2d 1378 (9th Cir. 1984).  However, the cases cited by Defendant are

27  inapposite.

28        In *Duenas*, the Court affirmed the denial of plaintiff's application for

1    retirement benefits because plaintiff had failed to establish that he was employed

2    between 1952 and 1954. 34 F.3d at 721. During reconsideration of the initial

3    denial, plaintiff failed to provide the names of any of his employers. *Id.* During a

4    hearing before the ALJ, plaintiff's counsel informed the ALJ that "she would seek to

5    identify and then contact [plaintiff's] past employers[,]" to which the ALJ agreed,

6    but plaintiff's counsel subsequently made no request that the ALJ develop the record

7    any further. *Id.* The *Duenas* Court held that the ALJ did not violate her duty to

8    develop the record where plaintiff "provided only sketchy information as to his

9    employment[, he] recalled neither for whom he worked nor what he had earned[,

10    and] . . . counsel for [plaintiff] specifically undertook to develop further information

11    concerning [plaintiff's] employment and was unsuccessful." *Id.* at 722.

12       Here, unlike in *Duenas*, Plaintiff clearly stated where and with whom he was

13    receiving treatment and offered to provide the ALJ with the information, which was

14    written on his prescription medication. Despite having this information, the ALJ did

15    not attempt to obtain Plaintiff's mental health treatment records. Under these

16    circumstances, the ALJ failed his heightened duty to further develop the record. *See*

17    *Sims*, 530 U.S. at 110-11 ("Social Security proceedings are inquisitorial rather than

18    adversarial. It is the ALJ's duty to investigate the facts and develop the arguments

19    both for and against granting benefits[.]").

20       In *Booz*, plaintiff's application for benefits was denied in 1973 and plaintiff

21    failed to appeal the ALJ's decision. 734 F.2d 1379. Plaintiff then renewed his

22    application for benefits five years later in 1978. *Id.* Plaintiff's second request was

23    denied in a decision by the ALJ and by the Appeals Council. *Id.* Plaintiff then

24    appealed to the district court. *Id.* The Ninth Circuit determined that plaintiff had the

25    burden of making a showing of "changed circumstances" because there was a

26    presumption of continuing non-disability created by the 1973 denial of his

27    application. *Id.* The *Booz* Court granted plaintiff's request to remand his

28    application due to "new evidence" because plaintiff had demonstrated "good cause"

1  for the failure to incorporate such evidence into his prior proceedings *and* there was

2  a "reasonable possibility" that the new evidence presented by plaintiff "would have

3  changed the outcome of the present case." *Id.* at 1380-81.

4      Contrary to Defendant's assertion, *Booz* is inapplicable to the instant action.

5  In *Booz*, plaintiff had to rebut a presumption of continuing non-disability created by

6  a prior denial of benefits and submitted new evidence to the district court which had

7  not previously been before the ALJ. *See* 734 F.2d at 1380. In the instant action,

8  Plaintiff has no such presumption to overcome. (*See generally* AR at 10-19.)

9  Further, Plaintiff presented the ALJ with evidence in the form of testimony, which

10  created an ambiguity as to Dr. Bagner's diagnosis of "mood disorder, not otherwise

11  specified." Due to this ambiguity, which in combination with Plaintiff's particular

12  vulnerabilities – that he was unrepresented and suffered from mental impairments –

13  created a heightened duty on the part of the ALJ to further develop the record. The

14  ALJ failed that duty.

15      Moreover, Defendant argues that "Plaintiff bears the burden of establishing

16  both the existence of medically determinable impairments and also proving that they

17  prevent him from engaging in substantial activity. . . . Plaintiff cannot now shift his

18  evidentiary burden by arguing that the ALJ should have developed the record

19  further." (Joint Stip. at 9.)

20      However, Defendant confounds the burden of *proof*, which is plainly on the

21  claimant at step two, with the ALJ's independent duty to develop the record, which

22  is triggered by ambiguous evidence. *Tonapetyan*, 242 F.3d at 1151. As discussed

23  above, Plaintiff's testimony created an ambiguity concerning his mental impairments

24  thus triggering the need for development of an adequate record. *See Hilliard v.*

25  *Barnhart*, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (ALJ violated independent

26  duty to develop the record where there was an ambiguity in the medical record

27  concerning plaintiff's cognitive impairment and ALJ failed to rule on plaintiff's

28  request for additional psychological testing). Accordingly, the ALJ failed to meet

15

1 | his duty to develop the record.

2

3 | **VI.**

4 | **REMAND IS APPROPRIATE**

5 | This Court has discretion to remand or reverse and award benefits. *McAllister*

6 | *v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989).  Where no

7 | useful purpose would be served by further proceedings, or where the record has been

8 | fully developed, it is appropriate to exercise this discretion to direct an immediate

9 | award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004);

10 | *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000),

11 | *cert. denied*, 531 U.S. 1038 (2000).  Where there are outstanding issues that must be

12 | resolved before a determination can be made, and it is not clear from the record that

13 | the ALJ would be required to find plaintiff disabled if all the evidence were properly

14 | evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211

15 | F.3d at 1179-80.

16 | Here, remand is required because the ALJ failed to fully and fairly develop the

17 | record.  On remand, the ALJ shall subpoena any available treatment records from

18 | Plaintiff's court-ordered treatment concerning his *mental* impairments.  The ALJ

19 | shall also subpoena any available treatment records regarding Plaintiff's *physical*

20 | impairments, including concerning Plaintiff's testimony that he receives treatment

21 | for physical conditions from "Dr. Medina" at "East Valley Clinic" in Covina.  (*See*

22 | AR at 36.)

23 | Because the Court concludes that the ALJ failed to fully and fairly develop the

24 | record, it does not reach Plaintiff's remaining contentions.  (*See* Joint Stip. at 14-16,

25 | 21-24, 24-26, 28.)  Credibility findings are reviewed in light of the record as a

26 | whole, which in the instant case should properly include Plaintiff's more recent

27 | treatment records with respect to Plaintiff's physical and mental impairments.  *See*

28 | *Struck v. Astrue*, 247 Fed.Appx. 84, 86-87 (9th Cir. 2007).  Accordingly, on remand,

1  the ALJ must reassess the credibility of both Plaintiff and his sister Laura Kakish.

2

3         Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

4  **REVERSING** the decision of the Commissioner denying benefits and

5  **REMANDING** the matter for further administrative action consistent with this

6  decision.

7

8  Dated: January 11, 2011         _____

9                                              Hon. Jay C. Gandhi
                                               United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17